USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __12/12/2019___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
UNITED STATES OF AMERICA,

          -against-

MARIO POWELL,

                        Defendant.

18 Cr. 287 (AT)

**ORDER**

ANALISA TORRES, District Judge:

    Pursuant to an indictment dated April 16, 2018, Defendant, Mario Powell, was charged with (1) a Hobbs Act robbery in violation of 18 U.S.C. §§ 1951 and 2, and (2) discharging a firearm in connection with the Hobbs Act robbery, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2. Indictment, ECF No. 5. Trial is scheduled for April 13, 2020.

    Defendant moves for an order: (1) suppressing evidence seized (a) incident to his arrest and (b) pursuant to three search warrants, (2) granting a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978); and (3) directing the early disclosure of materials falling under Federal Rule of Evidence 404(b), 18 U.S.C. § 3500, *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972). ECF No. 57. For the reasons stated below, Defendant's motions are DENIED.

## BACKGROUND

    The complaint dated March 24, 2018 alleges the following facts. On March 17, 2018, a livery cab driver received a call for a pick-up at 3439 Boston Road in the Bronx, to which the driver responded. Compl. ¶ 3(a)–(b), ECF No. 1. The driver picked up a male passenger, who asked to be driven to another location in the Bronx. *Id.* ¶ 3(b). After the cab reached the destination of Morrison Avenue between East 172nd and East 174th Streets, the passenger pulled out a firearm, pointed it at the driver, and demanded cash. *Id.* ¶ 3(c). The driver retrieved approximately $23 in cash and gave it to the passenger, who, upon exiting, discharged the

firearm through the open rear passenger door, shooting the driver several times. *Id.* ¶ 3(d). Having sustained multiple gunshot wounds, the driver lost control of the cab and sped northbound on Morrison Avenue. *Id.* ¶ 3(e). Officers with the New York City Police Department (the "NYPD") observed the erratically moving cab and responded at approximately 12:46 a.m. *Id.*

NYPD Detective Patrick Curran's interview notes indicate that, on March 19, 2018, at 5:05 p.m., the driver described the shooter as a black male, "in his young to mid 20's[,] wearing a black hooded jacket, black pants and black sneakers," "with what looked like slits between his eyebrows and a tattoo in between his eye brows," and with "some sort of stain on the left side of his nose." Def. Ex. K, ECF No. 58-11 (internal quotation marks omitted).

Video surveillance footage of the area depicts an individual sprinting southbound on Morrison Avenue shortly after the shooting, making a right turn westbound on East 172nd Street, and then turning left, continuing at a brisk pace on Stratford Avenue toward Westchester Avenue. Compl. ¶ 4(a)–(b). The person wore blue sneakers, a dark-colored puffy down coat with a hood, and black pants, and kept his hand in his pocket. *Id.* ¶ 4(c).[1] Still photos from the surveillance footage depict a tattoo on the individual's forehead. *Id.* Law enforcement officers aired videotaped excerpts on the local news on March 20, 2018. *Id.* ¶ 5(a).

On March 22, 2018, Defendant's relative identified Defendant as the person depicted in the video, based on the relative's belief that the blue sneakers belonged to Defendant. *Id.* The relative also described Defendant as having eyebrow slits and a facial tattoo. *Id.* A recent photograph of Defendant provided to law enforcement by another family member shows a tattoo on Defendant's forehead. *Id.* ¶ 5(b).

---

[1] Defendant notes that the surveillance footage shows that the individual "has both hands in his pockets." Def. Mem. at 18, ECF No. 58.

2

On March 23, 2018, Defendant was arrested. Def. Mem. at 5, ECF No. 58. That same day, a search warrant was executed at 3437 Seymour Avenue, Apt. 1A. *Id.* From a room exclusively occupied by Defendant, officers recovered a pair of blue sneakers, black pants, and a cell phone. *Id.*

On March 24, 2018, the criminal complaint was filed in this case, alleging that the driver observed the suspect as "ha[ving] a tattoo on his face," with "eyebrow 'slits,' which are thin vertical cuts in a person's eyebrow hair," and as "wearing dark clothing." *Id.* ¶ 3(f).

On April 13, 2018, two search warrants for historical cellular location information were obtained: the first for (347) 963-0680, the number used to call the cab driver, and the second for (929) 463-1551, which officers received from the cab driver's family as one used by the shooter. Def. Mem. at 6. On May 11, 2018, two additional search warrants for historical cellular location information were ordered: one for (347) 720-8054, the number associated with the cell phone recovered from Defendant's room during the March 23, 2018 search, and the second for (929) 288-9560, the number associated with the "What's App" application on the recovered cell phone. *Id.*

## DISCUSSION

I. <u>Suppression of Evidence Seized Incident to Defendant's Arrest</u>

Defendant argues that his arrest lacked probable cause, and that all tangible and testimonial fruits of his seizure and search should be suppressed. Def. Mem. at 6–11.[2]

    A. Legal Standard

"Probable cause to arrest a person exists if the law enforcement official, on the basis of

---

[2] Defendant moves to suppress "any and all tangible or testimonial fruits of his seizure and search by the police, including observations of [D]efendant's post-seizure conduct," but does not indicate what, if any, evidence was obtained incident to his arrest. Def. Mem. at 6; *see also id.* at 11.

3

the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person to be arrested." *United States v. Patrick*, 899 F.2d 169, 171 (2d Cir. 1990); *see also Beck v. Ohio*, 379 U.S. 89, 91 (1964). "[P]robable cause is a fluid concept— turning on the assessment of probabilities in particular factual contexts," *Illinois v. Gates*, 462 U.S. 213, 232 (1983), and though "probable cause requires a showing that a person 'of reasonable caution' would be warranted in the belief that a crime has been committed, 'it does not demand any showing that such a belief be correct or more likely true than false,'" *United States v. Wallace*, No. 97 Cr. 975, 1998 WL 401534, at *5 (S.D.N.Y. July 17, 1998) (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983)); *see also United States v. Medina*, 19 F. Supp. 3d 518, 532–33 (S.D.N.Y. 2014).

B. Analysis

Defendant argues that law enforcement lacked probable cause to arrest Defendant, because the driver's description of the shooter differs from Defendant's appearance in some respects. Def. Mem. 8–10. Defendant contends that there are several meaningful discrepancies: specifically, the driver described the shooter as having "black sneakers" (whereas the sneakers retrieved from Defendant's residence were blue), "a tattoo in between his eyebrows" (whereas Defendant's tattoo is on the right-hand side of his face), and a "stain on the left side of his nose" (whereas Defendant's nose has no such discoloration). Def. Mem. at 8–9. Defendant also points to the fact that the driver recalled that the shooter ran northbound on Morrison Avenue, whereas surveillance footage shows Defendant running southbound. *Id.* at 9–10. Defendant argues that these differences undermine the Government's claim that law enforcement had probable cause to arrest Defendant. *Id.*

The Government argues that the driver, who was interviewed two days after being shot,

4

provided "a distinctive description that aligned in critical respects with the appearance of the defendant," and that "it is not surprising, nor does it defeat probable cause, that certain aspects of [the shooter]'s appearance were omitted or overlooked," given the driver's vantage point of the shooter in the backseat, the driver's condition at the time of the interview, and the level of detail discussed. Gov't Mem. at 5, ECF No. 59.

The Court agrees with the Government. To establish probable cause, "it is not necessary to make a *prima facie* showing of criminal activity or to demonstrate that it is more probable than not that a crime has been or is being committed." *United States v. Cruz*, 834 F.2d 47, 50 (2d Cir. 1987) (internal quotation marks and citation omitted). Moreover, "if there is independent corroborative evidence to support the eyewitness's assertions, a person of reasonable caution is warranted in believing that an offense has been committed." *Wallace*, 1998 WL 401534, at *7.

To be sure, the fact that surveillance footage captures an individual identified as Defendant running from the vicinity of the shooting does not, on its own, establish that Defendant was the shooter; running from the sound of gunshots can be consistent with innocent behavior. Here, however, law enforcement considered the surveillance video footage with the driver's description of the shooter, which aligned in several key respects with Defendant's appearance, namely, that he had a tattoo on his face near his eye, eyebrow slits, wore dark clothing, and matched the described race and gender. *See also Cruz*, 834 F.2d at 51 ("[Probable cause] 'must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.'") (quoting *Brown*, 460 U.S. at 742)). The Court, therefore, rejects Defendant's claim that law enforcement lacked probable cause to arrest Defendant.

Accordingly, that portion of Defendant's motion seeking suppression of the fruits of his

arrest is DENIED.

II. <u>Suppression of Fruits of the March 23 and May 11, 2018 Search Warrants</u>

Defendant also moves to suppress the fruits of the searches conducted pursuant to three search warrants: (1) a March 23, 2018 warrant authorizing the search of the bedroom occupied by Defendant at 3437 Seymour Avenue, Apt. 1A; (2) a May 11, 2018 warrant authorizing the disclosure of historical location information for cellphone number (347) 720-8054; and (3) a May 11, 2018 warrant authorizing the disclosure of historical location information for cellphone number (929) 288-9560. Def. Mem. at 12. Defendant argues that the March 23, 2018 warrant lacked probable cause, and that the May 11, 2018 warrants were derivative of the March 23, 2018 warrant and similarly lacked probable cause. *Id.* at 12–13. The Court addresses each warrant in turn.

    A. The March 23, 2018 Search Warrant

        1. Standing

Defendant argues that he has standing to contest the March 23, 2018 warrant because he resided in a bedroom at the location at the time of his arrest, and had changed the lock on the bedroom door so that only he had access to the room. Def. Mem. at 15. The Government does not contest standing. *See generally* Gov't Mem. The Court agrees that Defendant had a legitimate expectation of privacy in the bedroom he occupied at 3437 Seymore Avenue, Apt. 1A, *see Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring), and that Defendant, therefore, has standing to contest the March 23, 2018 search warrant.

        2. Legal Standard

"A reviewing court must accord substantial deference to the finding of an issuing judicial officer that probable cause exists. . . . The reviewing court's determination should be limited to whether the issuing judicial officer had a substantial basis for the finding of probable cause."

*United States v. Wagner*, 989 F.2d 69, 72 (2d Cir. 1993)) (citations omitted). Moreover, "a court reviewing a challenged warrant . . . must accord considerable deference to the probable cause determination of the issuing magistrate." *United States v. Clark*, 638 F.3d 89, 93 (2d Cir. 2011) (internal quotation marks and citation omitted). A magistrate judge must apply a "totality-of-the-circumstances approach" to determine if probable cause exists to issue a search warrant. *See Gates*, 462 U.S. at 231. "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238.

        3.   Analysis

Defendant argues that the March 23, 2018 warrant lacked probable cause and contained misleading assertions because the supporting affidavit lacked evidence for its conclusions and omitted certain exculpatory facts. Def. Mem. at 14. Specifically, Defendant argues that the search warrant affidavit—the sworn testimony by Marcus Guest, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives of the U.S. Department of Justice, Def. Ex. Q, ECF No. 58-17—"inaccurately portrays" Defendant "as the perpetrator running from the scene," based on a "truncated version of the description of the perpetrator given to the police by the victim (tattoo on his face, dark clothing, thin vertical cuts in eyebrow hair (eyebrow 'slits')," which "does not include the victim's description of the black sneakers and the location of the tattoo." Def. Mem. at 16. Defendant further argues that the affidavit's reliance on the surveillance video footage and the family member's identification of Defendant as the individual in the video is misplaced, because such identification merely establishes "that the person in the video is Mario Powell, not that Mario Powell is the perpetrator of the crimes." *Id.* at 17. Last, Defendant contends that the special agent's opinion that the individual portrayed in the

7

surveillance video is the perpetrator is misleading, because that opinion was based on the special agent's conclusion that the surveillance footage showing the individual keeping his hand in his pocket is consistent with concealing a firearm. *Id.* at 17–18. Instead, Defendant argues, the individual could have been resting or warming his hands. *Id.*

The Court rejects Defendant's claim that the magistrate judge erred in concluding that there was probable cause for the issuance of the March 23, 2018 search warrant. Probable cause requires an analysis of the totality of the circumstances, *see Gates*, 462 U.S. at 230, applying a "flexible, common-sense standard," *Brown*, 460 U.S. at 742. Here, law enforcement officers set forth sufficient facts to establish that there was a "fair probability that contraband or evidence of a crime [would] be found" in Defendant's bedroom. *United States v. Falso*, 544 F.3d 110, 117 (2d Cir. 2008) (quoting *Gates*, 462 U.S. at 238). Although the affidavit's description of the perpetrator is abbreviated, it is not inaccurate, and the Court does not conclude that the special agent's opinion that the individual in the surveillance video exhibited behaviors consistent with that of the suspect (such as running with a hand or both hands in a pocket) was misleading, given the totality of the circumstances. Here, as with its review of probable cause for Defendant's arrest, the Court concludes that the driver's description, which aligned in key respects with traits of the individual later identified as Defendant, supports a finding of probable cause.

Accordingly, that portion of Defendant's motion seeking suppression of the fruits of the March 23, 2018 search warrant is DENIED.

    B. May 11, 2018 Search Warrants

        1. Standing

As with the March 23, 2018 search warrant, Defendant has standing to challenge the May 11, 2018 search warrants executed for (347) 720-8054 and (929) 288-9560, because the phone numbers were retrieved pursuant to the March 23, 2018 search warrant and are derivative of that

search. *See Wong Sun v. United States*, 371 U.S. 471, 484 (1963) ("The exclusionary prohibition extends as well to the indirect as the direct products of [unlawful searches]."); *Nardone v. United States*, 308 U.S. 338, 341 (1939); *see also supra* at 6 (citing *Katz*, 389 U.S. at 361).

2. Probable Cause

Defendant argues that because cell phone numbers (347) 720-8054 and (929) 288-9560 were obtained pursuant to the March 18, 2018 warrant, the historical cellular location information for those numbers should be suppressed as fruits of the poisonous tree. Def. Mem. at 19–23. However, there was sufficient support for a finding of probable cause for the March 23, 2018 warrant, and those same facts also support the "fair probability" that cellsite location information for Defendant's phone numbers would also provide evidence of a crime. *Falso*, 544 F.3d at 117.

Accordingly, that portion of Defendant's motion seeking suppression of the fruits of the May 11, 2018 search warrants is DENIED.

III. *Franks* Hearing

Next, Defendant requests a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), to "determine if the misstatements or omissions [in the Government's search warrant affidavits] were made intentionally or with reckless disregard." Def. Mem. at 25. To warrant a *Franks* hearing:

> There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. . . . Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant.

*Franks*, 438 U.S. at 171.

In support of his request for a *Franks* hearing, Defendant cites the following facts: (1) that another witness had described a dark-skinned perpetrator fleeing from the scene, when the defendant is "a light skinned black person," Def. Mem. at 26, and (2) that Defendant asserts that the affidavits for the challenged warrants omit that the driver believed the shooter ran northbound, and described the shooter as having a tattoo in between his eyebrows, a "stain" on the side of the perpetrator's nose, and as wearing black sneakers. *Id.*

Even if these facts had been brought to the attention of the magistrate judge, there remains ample probable cause to support the challenged warrants, as discussed above. *See supra* at 5–8; *see also United States v. Rajaratnam*, 719 F.3d 139, 146 (2d Cir. 2013) ("The ultimate inquiry [under *Franks*] is whether, after putting aside erroneous information and correcting material omissions, there remains a residue of independent and lawful information sufficient to support a finding of probable cause or necessity." (internal quotation marks, alterations, and citation omitted)). Defendant's motions can be resolved without a *Franks* hearing. *See United States v. Viscioso*, 711 F. Supp. 740, 745 (S.D.N.Y. 1989) (noting that district courts are "'not required as a matter of law to hold an evidentiary hearing if defendant's papers did not state sufficient facts which, if proven, would have required the granting of the relief requested'" (alteration omitted)) (quoting *United States v. Culotta*, 413 F.2d 1343, 1345 (2d Cir. 1969)).

Accordingly, Defendant's request for an evidentiary hearing is DENIED.

IV. <u>Disclosure of Uncharged Crimes or Other Bad Acts Under Fed. R. Evid. 404(b)</u>

Defendant moves for an order directing the Government to "disclose any and all acts which the Government will seek to introduce pursuant to Rule 404(b)," and requests a disclosure date of sixty days prior to trial. Def. Mem. at 27.

Pursuant to Federal Rule of Evidence 404(b)(1), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion

the person acted in accordance with the character." However, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* at (b)(2). Upon a defendant's request, the Government must "provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and do so before trial—or during trial if the court, for good cause, excuses lack of pretrial notice." *Id.* at (b)(2)(A)–(B). Rule 404(b) "sets no minimum time for action by the government in this request, nor would any time limit be appropriate, since the evidence the government wishes to offer may well change as the proof and possible defenses crystallize." *United States v. Matos-Peralta*, 691 F. Supp. 780, 791 (S.D.N.Y. 1988).

The Government argues that "discovery in this case is not [so] voluminous" as to justify Defendant's request, and represents that it "plans to provide the defendant with sufficient advance notice, as required by [Rule 404(b)]." Gov't Mem. at 20. Courts in this district have denied motions for the early disclosure of Rule 404(b) evidence based on similar representations by the Government. *See, e.g.*, *United States v. Allums*, No. 97 Cr. 267, 1997 WL 599562, at *1 (S.D.N.Y. Sept. 25, 1997) ("The Government has agreed to produce this material in time so that the defense may have an opportunity to challenge their admission; this is all that is required with respect to Rule 404(b) evidence.").

Because the Court will set a schedule for the disclosure of Rule 404(b) evidence prior to trial, and considering the Government's representation that it will comply, that portion of Defendant's motion seeking early disclosure of Rule 404(b) material is DENIED as premature.

V.      *Brady* and *Giglio* Material

Next, Defendant moves for an order requiring the Government to disclose all exculpatory material in its possession pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny,

11

including material that pertains to the credibility of Government witnesses pursuant to *Giglio v. United States*, 405 U.S. 150 (1972). Def. Mem. at 30–37.

Defendant's application is procedurally barred for failure to comply with Local Criminal Rule 16.1, which requires submission of an affidavit "certifying that counsel has conferred with counsel of the opposing party" in a good faith effort at resolution without intervention of the Court.

Moreover, Defendant's motion must be denied on the merits. Pursuant to the Due Process Clause, upon a criminal defendant's request, the Government must provide evidence in its possession that is favorable to the defendant and is material either to guilt or punishment, *Brady*, 373 U.S. at 87, including evidence in possession of individuals working on the Government's behalf, *see Kyles v. Whitley*, 514 U.S. 419, 437 (1995), and evidence that relates to the credibility of Government witnesses, *Giglio*, 405 U.S. at 154–55. Such evidence must be disclosed "in time for its effective use at trial." *United States v. Coppa*, 267 F.3d 132, 146 (2d Cir. 2001). The Court accepts the Government's representation that, "[t]o date, the Government is unaware of any additional potential *Brady* material regarding the defendant, but will provide timely disclosure to the defendant if any *Brady* material comes to light," Gov't Mem. at 21, and that "the Government intends to provide the defense with *Giglio* material prior to trial, and the Government is available to confer with the defendant on a reasonable disclosure schedule," *id.* at 22. *See United States v. Perez*, 940 F. Supp. 540, 553 (S.D.N.Y. 1996) (denying motion for pretrial disclosure of *Brady* and *Giglio* material because *Brady* "establishes no general right of pretrial discovery and gives rise to no pretrial remedies," and because "the government has agreed to make [the] information available to the defense . . . sufficiently in advance of the witness' testimony so as to avoid any delay at trial").

Accordingly, that portion of Defendant's motion for an order requiring early disclosure of

material pursuant to *Brady* and its progeny is DENIED.

VI.     Additional Motions

Defendant "requests the opportunity . . . to file additional or supplemental motions, based upon the resolution of the issues raised [in his motion] or the provision of additional discovery by the Government." Def. Mem. at 38. The Court will entertain requests seeking leave to file additional motions for good cause. Defendant's request for permission to file additional motions at this juncture is, however, DENIED as premature.

## CONCLUSION

Accordingly, for the reasons stated above, Defendant's motion is DENIED. The Clerk of Court is directed to terminate the motion at ECF No. 57.

SO ORDERED.

Dated: December 12, 2019
      New York, New York

_____
ANALISA TORRES
United States District Judge